In this case, the sentencing guideline range adopted by the sentencing court was determined exclusively by its application of the relevant conduct provision of the sentencing guidelines. Unfortunately, what the court failed to do, what the probation department failed to do, and what the government failed to address was the first prong of that analysis, that being a determination by the court of the scope of the jointly undertaken criminal activity. And the failure of the court to address that issue in any way whatsoever caused its application thereafter to be in error. The problem in this case is the reason, in my opinion, that the probation department, the government, and the court failed to engage in that analysis was because there was no jointly undertaken criminal activity which could have been the basis of that analysis. Ms. Yu and her husband engaged in the retail sale, legal retail sale, of chemical equipment to unknown third persons, people that they had never met before. Yeah, but she was found guilty of conspiracy. She pled guilty to conspiracy. There were three objects in count one of the conspiracy. Not challenging the validity of the plea. I can't argue that before the court. We take as a given there was an agreement. She pled guilty is what she did. There was no agreement as to the scope of the conspiracy. There was no agreement as to the scope of the criminal enterprise at issue. What happened was after she entered this guilty plea, midway through a court trial, the probation department came back and basically said all of the methamphetamine produced in all of the labs where this lab equipment was found, some 2,000 pounds of methamphetamine throughout California over a period of two years, was attributable to Ms. Yu. It's as if she ended up with a guideline sentence which would have been exactly the same had a single individual been responsible for organizing and controlling all of those labs throughout California for two years. The government says that everybody agreed at the time of the plea, or maybe it was at the time of sentencing, that there was 20.3 kilograms of meth seized. In count two, there is that amount, and she did plead guilty to that amount. Doesn't that trigger the higher guideline? No, it doesn't, because what the probation department did and what the court did in this case was to group all of the counts, and you'll find that in the probation report, grouped all of the drug counts together, and the calculation was based entirely upon relevant conduct. They never set apart count two and said, well, count two is over here by itself, and here's a separate analysis, guideline analysis for count two. Count one and two are grouped together, and the calculation is driven entirely by relevant conduct analysis. There is never any discussion of anything else in the probation department, and the court never discusses anything else. Also, if we look to the facts, did the use sell to anybody other than meth people? We don't know. There's nothing in the record to indicate. They had a retail business selling lab equipment and chemical supplies to anyone who walked in the door. Now, they removed identification from the things that they were selling. That must mean some knowledge of use for meth. What the use were guilty of, I submit to the court, is that the second and third objects charged in count one of the conspiracy, that is possession and distribution of lab equipment with reasonable knowledge or information to believe that that equipment was going to be used by others for manufacture of contraband narcotics. I grant the court that there is more than enough evidence for the use to, for that analysis to support a sentence for the use, given their pleas in this case. If I understand your position, you're really saying she pleaded guilty, but the scope of what she knows, really the foreseeability is not there. There's no scope of a jointly agreed upon activity, because she did not jointly agree with anyone to do anything with respect to what was going to happen once these. . . Her problem is, though, that she pleaded guilty to the amounts. I wanted to ask you one other question, and that is, she got 188 months on count one and two, and 188 months on count 12 to 22, which is not a tag. So what difference does it make if, say, we should set aside, not set aside the conviction, but set aside the sentence on count one? Does that, does it make a difference on the penalty? Can the count 12 to 22 be reduced? Yes, those are money laundering counts, and given the amount of money that is nowhere to be found in the record, I would submit to the court that there would be a much shorter guideline range for sentencing if all we did was look at the money laundering counts. 12 to 22 doesn't trigger the mandatory sentencing. No, no. So if we should say that 188 months is not sustainable on the record, although 188 months is given for 12 to 22, there's a possibility if we went back, she might get something better. I would submit to the court that if there was a different analysis, an analysis of a guideline range based upon the money laundering counts or an analysis based upon the possession and distribution of lab equipment, knowing that there's a possibility it would be used by others to manufacture narcotics, either of those analysis would result in a much lower guideline range for MSU. And this court has never found that the retail sales of lab equipment could trigger this kind of an analysis under relevant conduct. She admitted in count two that she knowingly and intentionally aided and abetted and procured the manufacture of 20.2 kilograms of methamphetamine. Two points. The analysis of the guideline range for that count was still a relevant conduct analysis based upon her supposed agreement to engage in this activity. And more importantly, in the change of plea colloquy with the court on counts one and counts two, there is specific factual questioning of Mr. Yu. There is a factual basis for Mr. Yu for those two counts. The government and the court never asked Mrs. Yu for any factual basis on counts one and two. But you're not attacking the validity of the plea. I'm not. We take that as a given. I'm merely stating that the analysis of the guideline ranges of all the drug counts are all relevant conduct analysis. And this is simply a wrong analysis because the court didn't do what this court said in Palavax Mazan it has to do, which is to first determine the scope of the jointly agreed upon criminal activity. There was no discussion. There isn't a word in the pre-sentence report. There isn't a word from the government. There isn't a word from the court about that analysis. One question. Was this raised, the scope raised before the sentencing judge? Mrs. Yu's counsel objected to the calculation of the sentencing guideline range based upon relevant conduct. At sentencing, the discussion focused on the court's concern about foreseeability. And the court basically said, look, we've got all of these vessels. We've got all of these heating mantles. Why is it not foreseeable that more than 15 pounds of methamphetamine would have been produced? That's the key question. If it's foreseeable, then it's part of the conspiracy and she's pleaded guilty to it. That's your problem. That's the second prong of the relevant conduct analysis. We can't get to the foreseeability prong unless we satisfy the scope prong. Palavax Mazan and the 1B1.3 specifically say that the court first has to conduct the scope analysis and the activity has to be foreseeable. All that happened in this case was an analysis on foreseeability. There was never any scope analysis done. And it has to be done. And in this case, the reason it can't be done is because Mrs. Yu could not agree with anyone because she didn't know these people. She had no contact with them. They walked in the door. Let me ask you one more question. If you're right, what's the remedy? Are we supposed to set the sentence aside or do we send it back to the district court to have that matter reviewed? Two remedies. First, the parties both agree that under MLA 3 there should be a partial remand for resentencing. But on this issue, I would suggest to the court that what should happen is that the sentence should be vacated, that the case should be remanded for a different, for a resentencing based upon a new analysis under the guidelines. Thank you very much. Thank you. Good morning. Good morning, Your Honors. Elizabeth Rhodes on behalf of the United States. In this case, the defendant raises three issues, starting with the first, which is reasonable foreseeability. The defendant alleges that there was no discussion regarding the jointly undertaking criminal activity. In his own brief, that can be done based on the implicit agreement fairly inferred from the conduct of the defendants. In this case, at the government's excerpt of record 125, the court in fact finds that Mrs. Yu was charged in an indictment with offenses stemming from the sales of significant quantities of laboratory equipment to persons they knew were using the equipment to manufacture methamphetamine. The court then goes on to list the reasons that the court found that in that jointly undertaken criminal activity, the amount of methamphetamine produced was reasonably foreseeable. Well, how did she know? For example, we're talking about a conspiracy, which means an agreement. She sells something at retail. How does she know that the buyer isn't going to sell it to somebody else or use it for some other purpose? She knows that it can be used for the manufacture of amphetamines because she was told by California authorities. They use this stuff, and you've got to know about it, and of course she erased the identification and so forth. So obviously she knew that this could be used, but there's no showing that she had an agreement with any third party about that they would use it or wouldn't resell it or wouldn't do this. So that means that while she knew that there was a conspiracy, she knew it could be used for the manufacture of amphetamines, there's nothing to show that she knew precisely what the buyer was going to do with it. Isn't that right? Well, Your Honor, in this conspiracy, as in most conspiracies, the mental state and the agreement shown by the two parties is usually shown through their actions. In this case, Mrs. Yu's actions were very significant. Number one, she was told by law enforcement that it could and was used for manufacturing meth, and in fact her product was found in meth labs. Number two, she lied to law enforcement when she said, no, no, this goes only to export. Number three, she created false invoices so that at the search warrant on the day of arrest when the agents executed a search warrant, they found invoices indicating that this lab equipment went to the east, to the far east, China and other locations, when in fact when they found the real invoices in those countries, that was not the equipment that went. Number four, there were serial numbers on each. I don't know all about that, but it doesn't show that she knew. Well, she knew there was going to be methamphetamines manufactured. She didn't know who was going to do it actually in the end and how it was going to use and whether they were actually, how much they were going to make. So what the government did is said, okay, you've got this equipment, and these people who actually got it just made tons of methamphetamines and you are stuck with it. And there's something wrong in that logic to me. Well, two points to your question, Your Honor, if I might. Number one, she did plead guilty to knowingly aiding and abetting the manufacture of methamphetamine. So in another case, if the defendant didn't, then the district court judge in this case, because it was a court trial, would have to decide if based on all the facts, some of which I've just elicited or just presented to you, that meant that the defendant knew. Number two, of course, the judge has to determine that there's a factual basis for the ghillie plea. And in this case, when they went over the factual basis, they went over it with her husband. But as I understand it, as to counts one and two, there was an omission of going through it with this lady. Well, that is, in fact, what defendant claims in her reply brief. But actually, at G.E.R. 75, at what? At government's excerpt of record 75, the court goes back and asks the prosecutor, the assistant United States attorney, and Mrs. Yu, some questions. And in fact, the government... What did he ask? What did the district court judge ask? Judge Minella? Judge Minella asked at G.E.R. 75, is there... She asked Ms. Yu, the court, at line 15, with respect to what was said about what you did and what you knew, is what Ms. Rhodes saying true? Defendant, yes. Is there anything that Ms. Rhodes said that you have heard about what you did or what your husband did and you observed or what you knew untrue? Defendant, no. The court, Ms. Rhodes, with respect to Mrs. Yu, are there additional facts that you want to put on the record? And then at G.E.R. 76, I indicate there are a few different facts. I would direct the court's attention to page 6. There was no plea agreement in this case, but there was a notice of factual basis to aid the court in the plea colloquy. In addition to the additional facts or different facts that... Who drafted the notice? The government drafted it, but as the court will know from the record, there was an additional day delay while the parties went over the factual basis. I think that is only in the record based on the dates indicated. But the parties went over the analysis. And as to count two, which Your Honors brought up earlier, the factual basis for that was that certain lab equipment left microlabs and went directly to a methamphetamine laboratory. And during the change of plea at G.E.R. 66, the court asked specifically if all of the counsel agree, it starts at page 65, if all of the counsel agree that in particular, in count two, the amount of methamphetamine that could be made was 20 kilograms or more. The cutoff level for a level 38, which the court ultimately found this defendant to be guilty of, is 15 kilograms. So under the court's analysis, and the district court says it several times, there is no calculation using any, and the PSR gave several alternative calculations that could be used, but the court said there is no calculation under which one could determine that Mrs. Yu was not guilty of at least aiding and abetting the manufacturer of 15 kilograms. So have you found any case in the Ninth Circuit about joint agreements of this type? I've looked, and I haven't found. Well, Your Honor, my research apparently is no better than yours. The one case that I think is most factually on point, although it doesn't deal with reasonable foreseeability, is Belden. In that case, it's a minor role case. And as is discussed at the sentencing hearing, the government admitted that this case, the selling of huge and enormous quantities of laboratory equipment, does not seem to have been reported in this circuit or other circuits. I've got to tell you about another circuit. There's United States v. Montaigne. The last one in the bank is 996 F. 2nd, 190. And then there's a habeas, 77 Federal 3rd, 226. And the combination really supports the government, although it's not precisely on point because it wasn't specifically raised until the habeas case we want to take a look at. Thank you, Your Honor. I apologize for not having that. I was the center in the case. Well, in this case, though, certainly this court, the Ninth Circuit, has recognized that aiding and abetting, in the Belden case, the manufacture of marijuana could be done by providing and maintaining equipment. Moreover, as the government showed in its sentencing position papers, and as the court actually referred to, the fact is that the legislature has been concerned with front-end deterrence. And that is why the pseudoephedrine guidelines and other listed chemical guidelines have actually increased. There was a time when the argument that defendant is making here was basically made in terms of pseudoephedrine, and that is it's not the real stuff, so it doesn't matter. In this case, given that the arguments for each of the arguments advanced by defendant are made under a clear error standard, the district court certainly did not clearly err in finding as it did. Thank you. Has the government gone after the manufacturers of these flasks? Your Honor, the government has worked with the manufacturer of these flasks to determine their undercover serial numbers. Moreover, the government has examined those records. The manufacturers know to whom they're selling this stuff. Yes, and that is actually how the government got the fact that the... But your simple answer is no, the manufacturers got free. Well, the manufacturers don't sell exclusively for cash, in fact, at all for cash, as Microlabs did. The manufacturers have put serial numbers on it, and the manufacturers do have some legitimate customer base, such as Pfizer. The difference here is that Microlabs didn't have any legitimate customer base that the government could find. Thank you, Ms. Rhodes. Mr. Brennan, you used up your time, but we'll give you a minute in rebuttal. Thank you. Very briefly, the Belden case is a case in which the defendant installed the generator that was used in the marijuana grow, so he was directly involved in the marijuana conspiracy, and he was going to share in the profits of whatever was sold. If the court looks specifically at the change of plea colloquy, as the court pointed out, there is nothing in the statement of the factual basis that implicates Ms. Yu. When she thereafter, the court asked her, do you agree with what the government said about your involvement, and she says yes. There's nothing that was said about her involvement in counts one and two. She did commit a... But you don't claim there was not a factual basis for the plea. The government is arguing that the reason the court... No, I'm asking you. You don't deny that there is a factual basis for the plea. The court did not take a factual basis. I can't attack the legitimacy of the plea in the context of this appeal, but the court erred in its calculation of the range. The two other objects in count one should have been the basis of that calculation, which was the possession and distribution of chemical equipment, having reasonable belief to know that it was going to be used in the manufacture of narcotics. That would have resulted in a lower range. Mr. Brennan, thank you. Ms. Rhodes, thank you as well. The case to start you has submitted.
judges: Bright , B. Fletcher, Silverman